**Paul PETRICH, a minor, by Janice M. LEE, his natural parent and guardian, Respondents,**

v.

**HARTFORD FIRE INSURANCE CO., Petitioner, Appellant.**

No. CX-87-935.

Supreme Court of Minnesota.

Aug. 19, 1988.

George Charles Hottinger, Minneapolis, for appellant.

J. Michael Egan, Logan N. Foreman, Minneapolis, for respondent.

Darron C. Knutson, St. Paul, amicus curiae.

## OPINION

POPOVICH, Justice.

Paul Petrich, a minor, brought a declaratory judgment action to determine Hartford Fire Insurance Company's liability for uninsured motorist benefits. Hartford denied coverage based on a policy exclusion for owned vehicles. The trial court ruled the exclusion invalid, granting summary judgment on the coverage issue for Petrich. Hartford appealed, and the Minnesota Court of Appeals affirmed the trial court on this point, though it reversed on another point neither party raises here. *Petrich v. Hartford Fire Ins. Co.*, 414 N.W.2d 558, 561–62 (Minn.App.1987). We reverse.

### I.

Gary Lee purchased an insurance policy on two of his three vehicles. His stepson, Paul Petrich, was injured while occupying the vehicle left uninsured.[1] No other vehicles were involved in the accident. The minor stepson, as an additional insured under Lee's policy, sought uninsured motorist coverage under Lee's policy covering the other two vehicles. The policy, however, excludes uninsured motorist coverage if the uninsured vehicle is one "[o]wned by or furnished or available for the regular use of you [*i.e.*, Gary Lee] or any family member." Is the exclusion enforceable? On these facts, we think so.

### II.

If Petrich owned a car and had it insured, he could, of course, make a claim under the uninsured motorist coverage of his own policy. There would be no reason why he should not be able to collect first party benefits under his own policy; the fact that he had been occupying an uninsured car owned by his stepfather would be immaterial. Consequently, a policy exclusion that purports to deny him recovery under his own policy is unenforceable. In this situation, the cases hold that the claimant's first party coverage "follows the person," even into an uninsured car owned by someone else in the family. *See Nygaard v. State Farm Mut. Auto Ins. Co.*, 301 Minn. 10, 18–19, 221 N.W.2d 151, 156–57 (1974); *American Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77, 79 (Minn.1982); *DeVille v. State Farm Mut. Auto. Ins. Co.*, 367 N.W.2d 574, 576 (Minn.App.1985); *Great American Ins. Co. v. Sticha*, 374 N.W.2d 556, 558 (Minn.App.1985).

A different scenario exists, however, if, as here, the stepson seeks to recover uninsured motorist benefits under the stepfather's policy insuring the stepfather's other vehicles. This situation recalls *Myers v. State Farm Mut. Auto. Ins.*, 336 N.W.2d 288 (Minn.1983), where the claimant was killed in a one-car accident and his heirs collected the car owner's liability limits then also sought underinsured coverage under the owner's policy. We recognized underinsured coverage is first-party coverage and in that sense follows the person, but found recovery in this circumstance converts underinsured motorist coverage into third-party liability coverage. *Myers*, 336 N.W.2d at 291. As we said there, an underinsured motorist policy "is not designed to compensate [the owner] or his additional insureds from [the owner's] failure to purchase sufficient liability insurance." *Id.* The insurer's policy exclusion was therefore valid. *See also Eisenschenk v. Millers' Mut. Ins. Ass'n*, 353 N.W.2d 662, 665 (Minn.App.1984); *Linder v. State Farm Mut. Auto. Ins. Co.*, 364 N.W.2d 481, 483 (Minn.App.1985), *pet. for rev. denied* (Minn., May 1, 1985).

The reasoning in the *Myers* case applies here as well. The *Myers* rule arises out of a fact pattern where the same person owns the at-fault vehicle and the policy under which the injured claimant seeks first-party coverage. Recovery in this situation inevitably compensates the owner who failed to

---

1. The parties stipulate Petrich occupied the car, but dispute whether he was driving. The driver's identity—and thus Petrich's fault—was reserved for trial. *See Petrich,* 414 N.W.2d at 562.

adequately insure one of his vehicles. Such is the case for Gary Lee, who owns and declined to insure the car that caused his stepson's injury, and also owns the uninsured motorist policy covering his stepson.

Plaintiff and the court of appeals attempt to distinguish *Myers* by saying the *Myers* court wished to prevent a doubling of the insured's liability limits, or a doubling of plaintiff's recovery, a situation that can only occur when the claimant first collects under third party liability coverage. This cannot happen here, points out plaintiff, because the only vehicle involved in the accident is uninsured. *Myers*, however, rests on the principle that vehicle owners may not purchase first party coverage and expect it to function as liability protection. The concern is not the creation of additional liability coverage, but the conversion of one type of insurance into another. If anything, the prohibition against coverage conversion established in *Myers*, an underinsured case, is even more complete here where the car owner has purchased no liability coverage at all on the vehicle involved in the accident.

As the dissent in the court of appeals below recognized, the *Nygaard*-type cases plaintiff relies on are distinguishable. *Nygaard* presumes two parties: (1) an insured, and (2) an uninsured tortfeasor against whom the injured insured seeks protection through his own uninsured motorist coverage. But in this case, where these two parties merge into one, the rule that "coverage follows the person" does not apply. *See Petrich*, 414 N.W.2d at 563 (Huspeni, J., dissenting).

First party coverage and third party coverage contemplate different risks. They are not the same and they are not priced the same. But from the perspective of the multiple-car owner and his insurer, any first party recovery in a *Myers*-type situation effectively provides liability insurance for the family vehicles left uninsured. This is unfair to the insurer which charges a much lesser premium for first party coverage.

Viewed from the perspective of the claimant, it might be argued that it is unfair to an additional insured to be denied uninsured motorist coverage because the named insured fails to insure the vehicle involved in the accident. Members of the policyholder's family might not own a car and hence could not purchase auto insurance of their own to protect themselves against the other policyholder's failure to insure his vehicles. But this complaint should be directed to the car owner who has a responsibility for insuring his cars, see, e.g., Minn.Stat. § 65B.49, subd. 4(2) (1986), not to the insurer which must fashion its premium structure to defined risks and can only react to the policyholder's decision to insure or not to insure.

■ Nor is the injured family member left without any insurance. Plaintiff acknowledges (as does Hartford) that he is entitled to collect economic loss benefits; plaintiff seems to argue, however, that he has just as strong a claim on uninsured motorist benefits. But economic loss benefits are a "basic provision" of the No–Fault Act, payable regardless of anyone's fault. *Iverson v. State Farm Mut. Auto. Ins. Co.*, 295 N.W.2d 573, 575 (Minn.1980). "[E]very person suffering loss from injury arising out of maintenance or use of a motor vehicle," says the statute, "has a right to basic economic loss benefits." Minn.Stat. § 65B.46, subd. 1 (1986). *See also* Minn.Stat. § 65B.64, subd. 3 (1986) (the member of the household of an uninsured owner, if a minor, is not disqualified for economic loss benefits under the assigned claims plan). Other first party coverages, namely, uninsured and underinsured coverage, even if required by statute, do not stand on the same footing.

We hold that Hartford may enforce its policy exclusion in this case.

Reversed.