Joyce KOSHIOL, Plaintiff-Appellant,†

v.

AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant-Respondent.

Court of Appeals

*No. 92-0981-FT. Submitted on briefs August 11, 1992.—Decided September 15, 1992.*

(Also reported in 491 N.W.2d 776.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *David R. Ludwigson* and *Susan E. Broin* of St. Paul, Minnesota.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Nancy J. Sixel* of *Tinglum, Thorie & Sixel* of River Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Joyce Koshiol appeals a judgment denying her underinsured motorist coverage for injuries

she sustained in an auto accident.[1] Koshiol argues that American Family Mutual Insurance Company (American) underinsured motorist policy provisions that preclude recovery for injuries involving vehicles owned by family members are invalid and unenforceable as a matter of public policy. Because the insurance contract excluding underinsured motorist coverage to Koshiol is not contrary to public policy, we affirm the trial court's decision.

Koshiol was a passenger in a vehicle driven by her husband and was injured in an automobile accident that both sides agree was caused by her husband's negligence. The Koshiols' vehicle collided with a car driven by Rochelle Haugen, seriously injuring two people and killing another person in the Haugen vehicle.

At the time of the accident, the Koshiols owned two cars, each insured by American. The accident vehicle's policy provided liability limits in the amount of $100,000 per person/$300,000 per occurrence, and identical underinsured motorist limits. The other vehicle's policy also had underinsured motorist coverage limits of $100,000/$300,000.

The claims against Koshiol's husband exceeded the $300,000 limits of his liability policy. Koshiol, fearful that claims against her husband would put the couple in bankruptcy, relinquished any claims she had under the liability portion of the accident vehicle's policy. American paid the full liability policy limits of $300,000 in satisfaction of the claims stemming from injuries to the Haugen vehicle occupants. Koshiol then submitted a claim under the underinsured motorist provision of the non-accident vehicle policy. American denied this claim, contending that the policy did not cover Koshiol's inju-

---

[1] This is an expedited appeal under Rule 809.17, Stats.

ries. Koshiol filed a complaint in St. Croix County Circuit Court and both parties moved for declaratory judgment.[2] The trial court agreed with American and found that no underinsured motorist coverage existed for Koshiol. Koshiol appealed.

The construction of an insurance contract is a question of law we review independently of the trial court. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985). Insurance policy language should be given its common everyday meaning and should be interpreted as a reasonable person in the insured's position would have understood it to mean. *Paape v. Northern Assur. Co.,* 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987). Under this test, we conclude, as the circuit court did, that a reasonable person in the insured's position would understand that no coverage exists for the damages sought by Koshiol. The applicable underinsured motorist provisions read as follows:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle.
>
> . . ..
>
> Underinsured motor vehicle, however, does not mean a vehicle:
>
> . . ..

[2]Koshiol's complaint sought underinsured motorist benefits under the policies of both the accident and non-accident vehicle. Her declaratory motion and this appeal however ask only for benefits from the non-accident vehicle's policy.

c. Owned by or furnished or available for the regular use of you or a relative.

. . ..

EXCLUSIONS

This coverage does not apply for bodily injury to a person:

1. While occupying, or when struck by, a motor vehicle that is not insured under this policy, if it is owned by you or any resident of your household.

Thus, the coverage sought by Koshiol is twice refused. Indeed, either of the two provisions: the "underinsured vehicle" definition, or the exclusion by itself, is sufficient to preclude coverage.

Koshiol argues, however, that both the definition of "underinsured vehicle" and the stated exclusion in the policy are invalid and unenforceable as matters of public policy. She submits Minnesota caselaw for the proposition that the applicable provisions are invalid in underinsured motorist policies. *See Great Amer. Ins. Co. v. Sticha,* 374 N.W.2d 556 (Minn. App. 1985); *De Ville v. State Farm Mut. Auto. Ins. Co.,* 367 N.W.2d 574 (Minn. App. 1985). However, Minnesota caselaw is not binding on Wisconsin courts. Furthermore, the Minnesota cases are not persuasive because they construe policies in light of the Minnesota No-Fault Act. *Sticha,* 374 N.W.2d at 558; *De Ville,* 367 N.W.2d at 576. Minnesota statute sec. 65B.49 (1991), a portion of the No-Fault Act, mandates underinsured motorist protection in all Minnesota auto insurance policies and promulgates many rules and policies regarding underinsured motorist policies. Wisconsin has no similar act and no public policy mandating underinsured motorist coverage. Minnesota caselaw and statutes have no effect on Wisconsin public policy and do

not persuade us to invalidate either one of the two provisions denying coverage.

Koshiol next looks to Wisconsin statutes. She contends that sec. 632.32, Stats., sets forth a public policy prohibiting both provisions. The policy behind sec. 632.32 is to afford an insured, injured by an *uninsured* motorist, the same protection he would have had were he injured by a minimally insured motorist. *Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 405 N.W.2d 327, 336 (1987). This policy is legislatively created and applies to *uninsured motorist* coverage, not to underinsured coverage. Koshiol applies it to underinsured motorist coverage and argues that it invalidates the excluding definition as well as the exclusion (known as the drive-other-car exclusion). We are not persuaded.

In upholding drive-other-car exclusions in liability policies, Wisconsin courts have recognized that the purpose of such exclusions is to prevent a policyholder from insuring all the cars in one household by taking out just one policy on only one automobile and paying only one premium. *Agnew v. American Family Mut. Ins. Co.*, 150 Wis. 2d 341, 350, 441 N.W.2d 222, 226 (1989); *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29, 32–33 (1973). Similarly, the provisions in these underinsured motorist policies prevent insureds from obtaining underinsured motorist coverage for two or more cars (and insuring against the concomitant increased risk), while having only one underinsured motorist policy on one automobile and paying only one premium. *See Schwochert v. American Family Mut. Ins. Co.*, 139 Wis. 2d 335, 350–51, 407 N.W.2d 525, 532 (1987). The excluding provisions are practical portions of insurance policies. Furthermore, without the underinsured motorist exclusions, a family is encouraged to carry low liability and high underinsured limits and thus protect the family

against the negligence of its own members while leaving the public exposed due to the low liability limits.

In the past, our supreme court refused to use sec. 632.32(4), Stats., to invoke a public policy regarding underinsured motorist coverage. In *Nelson v. Davidson,* 155 Wis. 2d 674, 682-83, 456 N.W.2d 343, 346-47 (1990), the court wrote,

> [i]n Wisconsin, the legislature has long taken an active role in determining which insurance coverages must be provided or offered by insurance companies.
> . . .
>
> To date, the statutory duty expressed by the legislature does not encompass mandatory [underinsured motorist] coverage, and we hesitate to interfere in determining an area of broad public policy in which the legislature has assumed such an active role.

We conclude that similar restraint is wise here. Section 632.32(4) does not contain a public policy invalidating either the "underinsured motor vehicle" definition or the drive-other-car exclusion.

Koshiol also contends that the drive-other-car exclusion is invalid under sec. 631.43(1), Stats. This "stacking" statute provides that "no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered . . . or the total indemnification promised by the policies if there were no 'other insurance' provisions." However, sec. 631.43(1) by its terms, also only applies when two policies promise to indemnify the insured against the same loss. *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 646, 436 N.W.2d 594, 597 (1989). Here, that is not the case. Because of the exclu-

sions, no two policies promise to indemnify against the same loss. Thus, in this situation, no Wisconsin public policy espoused in sec. 631.43(1) or elsewhere invalidates the drive-other-car exclusion to underinsured motorist coverage.

Because neither the definition of "underinsured motorist" nor the "drive-other-car" exclusion are invalid or unenforceable due to public policy, we affirm the decision of the circuit court denying coverage.

*By the Court.*—Judgment affirmed.