**Terry P. THEDIN, Plaintiff and Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, Defendant and Appellee.**

Civ. No. 930295.

Supreme Court of North Dakota.

June 28, 1994.

Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, MN, for plaintiff and appellant; argued by James E. Nicolai.

Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee; argued by Duane H. Ilvedson.

NEUMANN, Justice.

Terry Thedin appeals from a summary judgment dismissing his action for damages against United States Fidelity & Guaranty Insurance Company (Guaranty). We reverse and remand for further proceedings.

Thedin was injured while combining corn in Kansas for a custom combining crew run by Dennis Guenther and Rodney Jacobson. When the accident occurred on September 9, 1991, Thedin was driving a truck owned by Jacobson. The crew was combining at night, and it was quite dark. Thedin stopped the truck at the end of a row, and Guenther, who was operating a combine, pulled beside the truck and began auguring corn into the truck box. Thedin exited the truck and his right hand was seriously injured when it came into contact with an unguarded chain and sprocket on the combine.

The truck was insured by Jacobson with Guaranty under a comprehensive custom combining insurance package. Thedin brought an action for damages against Guaranty under the uninsured motorist provisions of that policy. The trial court granted Guaranty's motion for a summary judgment dismissal of the action, concluding that, as a matter of law, the combine was not an uninsured motor vehicle under the policy and, consequently, the policy provided no uninsured motorist coverage for the accident. Thedin appealed.

■ The purpose of summary judgment is to promote the prompt and expeditious disposition of a legal conflict on its merits, without trial, if no material dispute of fact exists or if only a question of law is involved. *Community Credit Union v. Homelvig*, 487 N.W.2d 602 (N.D.1992). The construction of an insurance policy is a question of law that is fully reviewable by this court. *State Farm Fire & Cas. Co. v. Sigman*, 508 N.W.2d 323 (N.D.1993).

The relevant language of the uninsured motorist endorsement under Jacobson's policy states:

"We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'

\*     \*     \*     \*     \*     \*

" 'Uninsured motor vehicle' means a land motor vehicle or trailer:

"... For which no liability bond or policy applies at the time of an 'accident'...."

■ For purposes of this litigation, the parties concede that the combine is not insured under any other insurance policy. An uninsured motor vehicle is defined under the policy as "a land motor vehicle." Thedin argues that the common, ordinary meaning of land motor vehicle is any device used for transporting people or objects that is self-propelled by a motor and travels on land. Using this commonly understood meaning, Thedin asserts that the combine is clearly a land motor vehicle. Guaranty argues that, for purposes of uninsured motorist coverage, the statutory definition of motor vehicle under Section 26.1–40–15.1(1), N.D.C.C., applies and that it excludes a combine:

" 'Motor vehicle' means a vehicle, *excluding motor vehicles weighing more than twenty thousand pounds*, having two or more load-bearing wheels, of a kind required to be registered under the laws of this state relating to motor vehicles, *designed primarily for operation upon the public streets, roads, and highways*, and driven by power other than muscular power, and includes a trailer drawn by or attached to such a vehicle." [Emphasis added.]

The combine is not a motor vehicle under this statutory definition. It is undisputed the combine weighs more than twenty thousand pounds and is not designed primarily for operation upon public roadways. However, we conclude that the statutory definition is not applicable, because our statutory scheme expressly allows insurance companies to provide broader uninsured motorist coverage

than is required by statute, and Guaranty's policy does that. Section 26.1–40–15.7(5), N.D.C.C., states:

> "Nothing in sections 26.1–40–15.1 through 26.1–40–15.7 may be construed to prevent an insurer from offering, making available, or providing coverage terms and conditions more favorable to its insured or limits higher than are required by sections 26.1–40–15.1 through 26.1–40–15.7."

■ The comprehensive custom combining insurance package clearly demonstrates Guaranty's ability to limit the definition of covered vehicles. Under the liability section of the policy, a covered "auto" is defined as "a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include 'mobile equipment.'" The term "mobile equipment" is broadly defined under the policy to include "[b]ulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads...." Under this liability section of the policy, Guaranty clearly and explicitly excludes from coverage farm machinery and other vehicles not primarily designed for road use. However, the uninsured motorist endorsement merely defines an uninsured motor vehicle as any "land motor vehicle." It does not exclude vehicles on the basis of weight, it does not exclude vehicles that are not designed primarily for operation upon the roadways, nor does it otherwise limit the term "land motor vehicle." If there is a conflict between the provisions of a policy form and an attached endorsement, the provisions of the endorsement prevail. *State Farm v. LaRoque*, 486 N.W.2d 235 (N.D.1992). When the definitions of coverage under a policy endorsement differ from the definitions of coverage under another section of the policy, we must assume that the insurer intended differences in coverage as a result.

■ If the language of an insurance contract is unambiguous, we construe the language according to its clear meaning. *State Farm v. LaRoque, supra.* The terms of an insurance policy are given their ordinary, usual and commonly accepted meaning. *Sellie v. N.D. Ins. Guaranty Ass'n,* 494 N.W.2d 151 (N.D.1992). Limitations or exclusions from broad coverage in an insurance

policy must be both clear and explicit. *Emcasco Ins. Co. v. L & M Development, Inc.,* 372 N.W.2d 908 (N.D.1985).

Our review of relevant case law demonstrates there is really no dispute that the terms "motor vehicle" and "land motor vehicle" are very broad in meaning and, when not accompanied by explicit exclusions or limiting language, result in broad insurance coverage. *See, e.g., Vaillancourt v. Concord General Mutual Ins. Co.,* 117 N.H. 48, 369 A.2d 208 (1977) (snowmobile is a land motor vehicle); *Aetna Cas. & Surety Co. v. Jewett Lumber Co.,* 209 N.W.2d 48 (Iowa 1973) (forklift is a land motor vehicle); *Taulelle v. Allstate Ins. Co.,* 296 Minn. 247, 207 N.W.2d 736 (1973) (motorcycle is a land motor vehicle).

■ Although Guaranty defines uninsured motor vehicle as a land motor vehicle, it does not define the latter term under the policy. When an insurer fails to define a term it is given its ordinary meaning, not a restrictive one. *Wall v. Pennsylvania Life Ins. Co.,* 274 N.W.2d 208 (N.D.1979). Within the context of this comprehensive custom combine insurance policy, we conclude the common, ordinary meaning of land motor vehicle encompasses any motor driven conveyance for transporting people or things on land. Consequently, we further conclude that, as a matter of law, the combine which injured Thedin is a land motor vehicle covered under the uninsured motorist endorsement of Jacobson's policy.

The second issue is whether Thedin is a covered insured. Under the uninsured motorist endorsement, a person can receive uninsured motorist benefits only if that person is an "insured" under the policy. Relevant to this case, an insured is defined under the endorsement as "[a]nyone ... 'occupying' a covered 'auto'...." However, under the liability coverage provisions of the policy an insured is more broadly defined as "[a]nyone ... while using with [the named insured's] permission a covered 'auto'...." Whether Thedin was either using or occupying the truck at the time of the accident is a fact question which must be decided by the factfinder after a full evidentiary hearing. However, in ruling on the summary judgment

motion, the trial court made a preliminary determination that Thedin was both using and occupying the truck at the time of the accident. On appeal, Guaranty asserts that because the uninsured motorist endorsement defines an insured as someone "occupying" and not someone merely "using" a covered vehicle, there is no uninsured motorist coverage unless Thedin was occupying the truck at the time of the accident. In response, Thedin argues that our uninsured motorist statutes prohibit an insurer from defining an insured more narrowly under the uninsured motorist endorsement than under the general liability provisions of the policy. We address this legal issue, because it is relevant to the factual question whether Thedin is an insured under the policy who is entitled to uninsured motorist benefits.

Section 26.1–40–15.2, N.D.C.C., prohibits issuing motor vehicle liability insurance "unless uninsured motorist coverage is provided therein or supplemental thereto...." The statute requires uninsured motorist coverage that will "pay compensatory damages which an insured is legally entitled to collect ... from the owner or operator of an uninsured motor vehicle...." Thedin relies on a line of cases, construing similar uninsured motorist statutes, which hold that an insurer cannot limit the class of persons covered under the uninsured motorist endorsement to a group smaller than that covered under the liability provisions of the same policy. *Hager v. American West Ins. Co.*, 732 F.Supp. 1072 (D.Mont.1989); *Girrens v. Farm Bureau Mut. Ins. Co., Inc.*, 238 Kan. 670, 715 P.2d 389 (1986); *State Farm Mut. Auto Ins. Co. v. Jackson*, 462 So.2d 346 (Ala.1984); *Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920 (Minn. 1978); *Federated American Ins. Co. v. Raynes*, 88 Wash.2d 439, 563 P.2d 815 (1977).

In *Kaysen, supra*, 268 N.W.2d at 924–925, the Minnesota Supreme Court construed its statute requiring issuers of any "plan of reparation security" to issue uninsured motorist vehicle insurance "for the protection of persons insured thereunder":

"By requiring that every plan of reparation security issued in Minnesota include uninsured motorist coverage, the legislature no doubt intended that the scope of this im-portant remedial measure be coextensive with the other coverage afforded in each plan of reparation security. If insurers are allowed to designate a separate and smaller category of persons insured under uninsured motorist coverage, then the broad-based protection which the legislature intended to require could be contractually restricted at the whim of insurers."

In *Girrens, supra*, 715 P.2d at 391, the Kansas statute required all automobile liability insurance policies to include uninsured motorist coverage for payment of sums "which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator...." The court concluded that this statute required every automobile liability insurance policy to include uninsured motorist coverage and that the insurance company could not make the class of insureds with uninsured motorist coverage more restrictive under a policy than the class of persons statutorily entitled to liability coverage for personal injury and property damage.

■ Section 26.1–40–15.2(1), N.D.C.C., is a remedial statute with the same objective as the statutes construed in the above-cited authorities. This legislation requires motor vehicle liability insurers to provide financial protection to its insured motorists if they are injured by an uninsured motorist. Our laws must be construed liberally, with a view to effect their objectives and promote justice. Section 1–02–01, N.D.C.C. Thus, we agree with the above-cited jurisdictions that insurers are prohibited from defining persons having uninsured motorist coverage more restrictively than they define persons having liability protection under the same policy.

Section 26.1–40–15.7, N.D.C.C., referring to selection of limits of uninsured motorist coverage, says, "[a]fter selection of limits by a named insured or applicant ... [s]uch selection ... is valid for all insureds under the policy." This statute also demonstrates a legislative intent that all insureds under a policy must receive uninsured motorist coverage.

■ We conclude the uninsured motorist endorsement under Guaranty's policy imper-

missibly attempts to restrict the class of insureds to whom uninsured motorist coverage is offered. Its limiting definition is contrary to the requirement under Section 26.1–40–15.2, N.D.C.C, that every insurer must offer uninsured motorist coverage to its insureds under its motor vehicle liability insurance policies. It is also contrary to the requirement under Section 26.1–40–15.7, N.D.C.C., that the selected limits of uninsured motorist coverage apply to "all insureds under the policy." The limited definition of insured under the endorsement is therefore invalid, and the definition of insured under the liability section of the policy applies to the uninsured motorist endorsement under the policy. The summary judgment dismissing Thedin's action is reversed, and the case is remanded for further proceedings in accordance with this opinion.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.